# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENT BYERS; ERROL ALISTAIR; JUNHAO; LUCKY D.; JONG R.D.; S. ROBERTS; J. BELL; MOREBET LIMITED; L. ZHAO; KHOO WING; P. DEVIN; LOODS B.V.; S. JAMES; YANG HOW; K. DAVID; EDWARD JOHNS; NICKLE LEE; S. JONG; DRAKE HK; and JUSTIN BERK,** | Civil Action No.: _26-CV-01651__ |
| *Plaintiffs,* | **COMPLAINT** |
| v. | |
| FENWICK & WEST LLP, a California limited liability partnership; TYLER NEWBY, an individual; ANDREW T. ALBERTSON, an individual; RICHARD L. DICKSON, an individual; RODGER R. COLE, an individual; THOMAS ENSIGN, an individual; NOAH ROSENTHAL, an individual; and JOHN DOES 1-10, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

**Edward Lehman, Esq.**
Illinois ARDC No. 6194489 | Lehman, Lee & Xu
Suite 33rd Floor, Tower One, Times Square
1 Matheson Street, Causeway Bay, Hong Kong SAR, PRC
*Tel: (852) 3588-2188 | mail@lehmanlaw.com | Lead Counsel for Plaintiffs | PHV Pending*

**Anthony Scordo, Esq., P.C.**
The Law Office of Anthony Scordo, Esq., P.C.
69 E. Allendale Road, Saddle River NJ 07458 | P.O. Box 74, Cedar Grove NJ 07009
*Tel: (973) 837-1861 | anthonyscordo@msn.com | Co-Counsel for Plaintiffs | PHV Pending*

**A. Wayne Hood II, Esq.**
Infinite Estate Planning, LLC
2525 Elvans Road SE Washington, DC 20020
*Tel: (202) 978-0505 | wayne@infiniteestateplanning.com | D.C. Local Counsel for Plaintiffs*

Fenwick & West LLP was the primary outside law firm for FTX Trading Ltd. for four years. During those four years, Fenwick's attorneys were told — directly, by FTX's own Director of Engineering — that FTX customer funds were being stolen. Fenwick's attorneys responded by advising on how to hide it. They built the shell company that moved the stolen money. They implemented the communications system that destroyed the evidence. They put their own firm's name behind the man who did it. When the fraud collapsed and the world's attention turned to those who had built and sustained it, Fenwick deleted every public trace of its involvement. Twenty people from five countries lost their life savings. They are in this Court to prove what the court-appointed Bankruptcy Examiner already found: that Fenwick was deeply intertwined in nearly every aspect of what happened to them.

# PRELIMINARY STATEMENT

This is an individual action. Twenty named plaintiffs — each identified by country, each with documented losses — bring their own claims for their own injuries. They do not represent a class. They do not speak for absent parties. Their claims are governed by the fraud and collusion exception to the District of Columbia's privity doctrine, recognized in Morowitz v. Marvel, 423 A.2d 196 (D.C. 1980), and independently by the law of direct fraudulent misrepresentation to identifiable third parties.

Plaintiffs were not negligent in entrusting their assets to FTX. Each Plaintiff reasonably relied on FTX's representations that customer assets were segregated and safely held. Those representations were credible, in material part, because Fenwick & West LLP — one of the most prestigious technology law firms in the United States — was FTX's primary outside counsel, had structured its corporate framework, and had publicly associated its institutional name with FTX's operations. The signal of professional legitimacy that Fenwick's continued representation conveyed was not one that ordinary FTX customers could have been expected to disbelieve, or to investigate independently. Each Plaintiff's reliance was reasonable. The question in this case is whether the lawyers who manufactured that appearance of legitimacy while knowing the truth are accountable for the consequences.

None of the twenty Plaintiffs has participated as a named plaintiff or class representative in MDL No. 1:23-md-03076-KMM (S.D. Fla., Judge Moore). None has executed any MDL class counsel engagement agreement. None is subject to any MDL settlement bar order as a matter of due process. The claims asserted in this complaint are individual claims against individual defendants for individual professional acts. No MDL proceeding has addressed them. No MDL settlement can release them without the individual consent of each Plaintiff.

# JURISDICTION AND VENUE

1. Subject matter jurisdiction: 28 U.S.C. § 1332(a)(2). All twenty Plaintiffs are foreign citizens or foreign-organized entities. Defendants Newby, Albertson, and Dickson are citizens of California. Defendant Cole is a former California citizen now retired. Defendant Ensign is a citizen of the District of Columbia. Defendant Rosenthal is a citizen of California or another state, to be confirmed through early discovery. Fenwick & West LLP is a California limited liability partnership with its principal place of business in Mountain View, California. The amount in controversy exceeds $75,000 exclusive of interest and

costs; the aggregate compensatory losses of the twenty Plaintiffs exceed USD $525,000,000.

2. Venue: 28 U.S.C. § 1391(b)(2). Fenwick & West LLP maintains its Washington, DC office at 1155 F Street NW, 12th Floor, Washington, DC 20004. Defendant Ensign is the founding partner of that office and a DC resident. A substantial part of the acts and omissions giving rise to this complaint occurred in or were directed at this District, as specifically described below.

3. Personal jurisdiction over Fenwick & West LLP: DC Code § 13-423(a)(1). Fenwick transacts continuous and substantial business in this District through its Washington, DC office, which it established in 2021 specifically to serve technology clients facing regulatory scrutiny from DC-based federal agencies — including the agencies whose enforcement jurisdiction FTX was specifically structured to avoid.

4. Personal jurisdiction over Defendant Ensign: DC Code § 13-423(a)(1). Ensign is a DC resident and the founding partner of Fenwick's DC office.

5. Personal jurisdiction over Defendant Newby: DC Code § 13-423(a)(1) and (a)(3). Newby is a partner in Fenwick's California offices and co-chair of its privacy and information security practice. He previously served for four years as a federal prosecutor in the Computer Crimes Section of the Department of Justice in Washington, DC. In connection with Fenwick's representation of FTX, Newby provided specific legal advice relating to FTX's obligations under and exposure to the Bank Secrecy Act and the regulations of the Financial Crimes Enforcement Network (FinCEN), which is headquartered in Vienna, Virginia and operates under the authority of the DC-based United States Department of Treasury. He also provided advice relating to FTX's registration obligations under the Commodity Exchange Act as administered by the Commodity Futures Trading Commission (CFTC), headquartered in Washington, DC. This advice specifically addressed whether and how FTX could structure its operations to minimize or avoid regulatory action by these DC-based federal authorities. These acts constitute the transaction of business in this District and the commission of acts outside this District causing injury within it, within the meaning of DC Code § 13-423(a)(1) and (a)(3). Specific personal jurisdiction over Newby is established by these DC-directed regulatory compliance acts.

6. Personal jurisdiction over Defendants Albertson, Dickson, Cole, and Rosenthal: DC Code § 13-423(a)(1) through the agency of Fenwick's DC operations, which each exercised professional and governance authority over during the relevant period. Plaintiffs reserve the right to seek jurisdictional discovery if any defendant contests personal jurisdiction.

7. MDL non-participation and bar order reservation: Plaintiffs have not participated as named plaintiffs or class representatives in MDL No. 1:23-md-03076-KMM. They have not consented to any bar order, channeling injunction, or release in that proceeding. The MDL class has not been certified. Even if these Plaintiffs fall within the MDL class definition,

the constitutional due process requirements for binding absent class members — including adequate notice, adequate representation, and an opportunity to opt out — have not been satisfied as to the specific individual claims against individual Fenwick attorneys asserted in this complaint. Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997); Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999). All FRCP Rule 24 rights are reserved.

8. Joint tortfeasor and settlement credit: The Fenwick defendants in this action and the defendants in Civil Action No. 2:26-civ-05195 (D.N.J.) are joint tortfeasors. Total recovery across all proceedings combined shall not exceed Plaintiffs' actual compensatory damages. Any amounts received in Civil Action No. 2:26-civ-05195 or MDL No. 1:23-md-03076-KMM shall be credited against recoveries in this action.

## THE PARTIES

### I. Plaintiffs

9. KENT BYERS is a Canadian citizen, resident in Singapore, and the Lead Plaintiff. Byers maintained accounts on the FTX platform and, in reliance on FTX's representations that customer assets were safely held — representations that the professional standing of FTX's counsel materially supported — deposited and maintained assets on the platform. Byers had no means of knowing, and no reason to suspect, that Fenwick attorneys had been specifically informed that those very assets were being misappropriated. When FTX collapsed in November 2022, his assets were frozen and his withdrawal requests refused. His losses exceed USD $2,500,000.

10. ERROL ALISTAIR. Citizen and resident of Singapore. Losses: in excess of USD $25,000,000.

11. JUNHAO. Citizen and national of Korea. Losses: in excess of USD $500,000,000.

12. LUCKY D. Resident of Hong Kong. Losses: approximately USD $620,000.

13. JONG R.D. Citizen of the European Union.

14. S. ROBERTS. Resident of Singapore. Losses: in excess of USD $3,700,000.

15. J. BELL. Resident of the United Kingdom.

16. MOREBET LIMITED. Limited liability company, United Kingdom.

17. L. ZHAO. Resident of Hong Kong.

18. KHOO WING. Resident of Singapore.

19. P. DEVIN. Resident of Singapore.

20. LOODS B.V. Limited liability company, European Union.

21. S. JAMES. Citizen of the European Union.

22. YANG HOW. Resident of Hong Kong. Losses: approximately USD $950,000.

23. K. DAVID. Resident of Hong Kong.

24. EDWARD JOHNS. Resident of Hong Kong.

25. NICKLE LEE. Resident of Hong Kong.

26. S. JONG. Resident of Korea.

27. DRAKE HK. Limited liability company, Hong Kong.

28. JUSTIN BERK. Resident of Hong Kong.

## II. Defendants

29. FENWICK & WEST LLP. California LLP. Principal office: 801 California Street, Mountain View, CA 94041 (Tel: 650-988-8500). DC office: 1155 F Street NW, 12th Floor, Washington, DC 20004. Service of process on Fenwick & West LLP shall be effected at its Washington, DC office: 1155 F Street NW, 12th Floor, Washington, DC 20004. AmLaw 100. MDL defense counsel: Kevin S. Rosen (krosen@gibsondunn.com) and Nancy E. Hart (nhart@gibsondunn.com), Gibson, Dunn & Crutcher — retained in approximately June 2023, before the MDL Law Firm Track complaint was filed August 7, 2023.

30. TYLER NEWBY, Esq. Named partner and co-chair of Fenwick's privacy and information security practice. California-based. Email: tnewby@fenwick.com. Former federal prosecutor, DOJ Computer Crimes Section, Washington DC (2007-2011). In connection with Fenwick's representation of FTX, Newby advised on FTX's regulatory compliance obligations to FinCEN, the CFTC, and related DC-based federal authorities, and on FTX's internal communications practices.

31. ANDREW T. ALBERTSON, Esq. Named partner, Corporate Group. California-based. Email: aalbertson@fenwick.com. Advised FTX on corporate and venture capital matters. Note: A separate individual named Steve Albertson — an antitrust partner distinct from Defendant Andrew T. Albertson — co-founded Fenwick's DC office in 2021.

32. RICHARD L. DICKSON, Esq. Firmwide Chair. California-based. Email: rdickson@fenwick.com.

33. RODGER R. COLE, Esq. Former Firmwide Managing Partner. Now retired from Fenwick. Email: rcole@fenwick.com. Served as Managing Partner throughout the FTX engagement period.

34. THOMAS ENSIGN, Esq. Founding partner, Fenwick DC office. DC resident. Email: tensign@fenwick.com. Opened Fenwick's DC office in 2021 specifically to serve technology clients with regulatory exposure before DC federal agencies.

35. NOAH ROSENTHAL, Esq. Conflicts Attorney, Risk Management. Email: nrosenthal@fenwick.com. Fenwick's own published institutional framework identifies

Rosenthal's specific role as reviewing and analyzing conflict issues regarding business intake, drafting conflict waivers, and advising on ethical and compliance matters in connection with client representations.

36. JOHN DOE No. 1 — DANIEL FRIEDBERG, Esq. Former Chair, Fenwick cryptocurrency and payments practice. While a Fenwick partner, Friedberg (a) wrote on Fenwick letterhead to institutional investors and lenders vouching for Bankman-Fried's character and reputation; (b) directed Fenwick attorneys to incorporate North Dimension Inc. in Delaware in August 2020 — a company that received in excess of three billion dollars in FTX customer funds while publicly presenting itself as an electronics retailer; and (c) subsequently left Fenwick in March 2020 to join FTX as Chief Regulatory Officer and Chief Compliance Officer, carrying with him direct knowledge of the legal structures Fenwick had built for FTX. The FTX bankruptcy estate sued Friedberg in an adversary proceeding filed June 27, 2023, for breach of fiduciary duty, fraud, and related claims.

37. JOHN DOES 2-10. Fenwick attorneys who incorporated North Dimension Inc. at Friedberg's direction; Fenwick's General Counsel; Fenwick's Director of Risk Management; and other Fenwick attorneys involved in the concurrent representation of FTX and Alameda Research.

## FACTS

### I. Fenwick & West and FTX — The Engagement

38. Fenwick & West LLP served as FTX Trading Ltd.'s primary outside law firm from approximately 2018 through FTX's collapse in November 2022. The court-appointed Independent Examiner, whose Phase II Report issued September 25, 2024 after review of more than 200,000 documents, found that Fenwick created 'all of the corporate structures, company controls, and agreements for both Alameda and FTX'; 'formed North Dimension and other shell entities to obscure asset movements'; 'implemented auto-deleting messages sent between FTX executives via the encrypted messaging app Signal'; 'drafted backdated agreements to justify illicit transfers retroactively'; and was 'deeply intertwined in nearly every aspect of FTX Group's wrongdoing.' These findings are those of a court-appointed officer based on documentary evidence in federal bankruptcy proceedings to which Fenwick was a party.

39. Fenwick simultaneously represented FTX Trading Ltd. and Alameda Research LLC — the exchange and the hedge fund that, by September 2022, owed FTX approximately thirteen billion dollars in customer funds. No concurrent conflict waiver satisfying the requirements of DC Rule of Professional Conduct 1.7(b) has been identified in any public record.

## II. Nishad Singh's Testimony

40. Nishad Singh served as FTX's Director of Engineering. He pleaded guilty to multiple federal charges including wire fraud conspiracy and securities fraud conspiracy, and cooperated fully with federal prosecutors. He testified under oath at the criminal trial of Samuel Bankman-Fried (S.D.N.Y., October 2023).

41. Singh testified that he personally informed Fenwick attorneys of the misuse of FTX customer funds, improper loans made from those funds to Alameda Research, and false representations being made to FTX customers and investors. The MDL amended complaint filed August 2025 — by experienced plaintiffs' counsel under Rule 11 of the Federal Rules of Civil Procedure — specifically characterizes Singh's trial testimony as establishing that 'he informed Fenwick of the misuse of customer funds, improper loans, and false representations, and that Fenwick advised on how to facilitate and hide these very acts.'

42. Singh's testimony is corroborated by three independent sources. First: the Independent Examiner's documentary findings establishing Fenwick's operational implementation of specific concealment mechanisms. Second: Fenwick's opposition to a defense subpoena in the Bankman-Fried criminal proceedings specifically seeking Fenwick's documents on legal advice regarding Signal and FTX's regulatory registration obligations — Fenwick resisted producing those specific documents. Third: Fenwick's retention of Kevin S. Rosen and Nancy E. Hart of Gibson, Dunn & Crutcher approximately six weeks before the MDL Law Firm Track complaint was filed — Fenwick sought the most prominent law firm defense counsel in the country before any civil plaintiff had filed against it.

## III. The Signal Communications Policy

43. The Independent Examiner found that Fenwick attorneys 'implemented auto-deleting messages sent between FTX executives via the encrypted messaging app Signal.' The Examiner's use of 'implemented' — not 'advised on' or 'reviewed' — reflects the Examiner's specific documentary finding that Fenwick attorneys took active professional steps to put this communications practice into operation within FTX. Federal prosecutors specifically identified FTX's auto-delete communications policy as a mechanism that enabled the concealment of the fraud from regulators, investigators, and the courts.

44. Tyler Newby is a partner and co-chair of Fenwick's privacy and information security practice whose specific expertise encompasses advising technology companies on their regulatory obligations and communications practices in connection with federal law enforcement and regulatory agencies. In connection with Fenwick's FTX engagement, upon information and belief based on Newby's specific practice area expertise and the subject matter of the defense subpoena Fenwick opposed in the Bankman-Fried criminal proceedings, Newby was among the Fenwick attorneys involved in advising FTX on its communications policy. The specific documents on this subject — billing records,

communications, and engagement files — will be identified through discovery of Fenwick's FTX files.

## IV. The North Dimension Creation and the Friedberg Letterhead

45. In August 2020, Fenwick attorneys incorporated North Dimension Inc. in Delaware at Friedberg's direction. North Dimension publicly presented itself as an electronics retailer — it maintained a website, a California address, and a commercial presentation consistent with a legitimate consumer electronics business. It was not. North Dimension received in excess of three billion dollars in FTX customer funds by the end of 2021. The FTX bankruptcy complaint against Friedberg, filed June 27, 2023, alleges that Friedberg directed the creation of 'a bogus corporate register of members and managers in order to give North Dimension, a purely shell company, a false air of legitimacy.' Fenwick did not merely advise on North Dimension. Fenwick created it.

46. While still a Fenwick partner, Friedberg wrote on Fenwick's official firm letterhead to institutional investors and lenders seeking to extend credit or capital to FTX or Alameda, representing that the firm knew the principal of Alameda Research and considered him to be of high reputation in the industry. Those representations were made on official law firm letterhead, bearing Fenwick's institutional name, to commercial decision-makers who acted in reliance on them. They were false. Samuel Bankman-Fried was convicted of seven counts of federal fraud. Each person or entity who received Friedberg's Fenwick letterhead representation and who subsequently provided capital, credit, or other commercial accommodation to FTX or Alameda in reliance on it was injured by that false representation.

## V. The Venture Capital Fundraising

47. Evidence introduced at Bankman-Fried's criminal trial established that FTX insiders specifically cited the ability to use 'the great Fenwick name' as essential to obtaining institutional investor credibility. Andrew Albertson, as the Fenwick partner responsible for FTX's corporate and venture capital work, facilitated introductions to institutional investors, used Fenwick's institutional standing to signal to those investors that FTX operated with competent and reputable legal oversight, and participated in the process through which FTX raised in excess of $1.3 billion in venture capital. This institutional credibility, endorsed by Fenwick's continued representation and Albertson's personal professional participation, was relied upon not only by institutional investors but by the broader FTX customer community that followed institutional validation as a proxy for legitimacy.

## VI. Fenwick's Institutional Quality Management Failure

48. Fenwick & West LLP maintained a published institutional framework for risk management and conflict analysis. Noah Rosenthal's specific, publicly described role included reviewing all conflicts of interest arising from firm business intake, drafting conflict waivers, and advising on ethical and compliance matters. Fenwick simultaneously represented FTX and Alameda Research — two directly adverse clients — without any publicly documented conflict waiver. This failure, in a firm with Fenwick's institutional resources and published compliance framework, was not an accident. It was either a failure of Rosenthal's specific institutional function or an active decision by someone with authority over that function.

49. Governance of the firm during the entire FTX engagement period rested with Rodger Cole as Managing Partner and Richard Dickson as Firmwide Chair. Each bore institutional responsibility for ensuring that the firm's quality management and conflict monitoring systems functioned. Thomas Ensign, as founding partner of the DC office established specifically to serve the technology regulatory client base that FTX exemplified, bore DC-level governance responsibility for the regulatory compliance work performed through or in connection with his office.

## VII. The Post-Collapse Conduct

50. Following FTX's November 11, 2022 bankruptcy filing, Fenwick deleted all FTX references from its public website — client matter listings, attorney biographical references, and any promotional content. Fenwick's litigation hold obligations arose no later than November 11, 2022. The deletion of website content after that date violated those obligations. Additionally, in approximately June 2023 — before any civil complaint had been filed against it — Fenwick retained Kevin S. Rosen and Nancy E. Hart of Gibson, Dunn & Crutcher's Law Firm Defense Practice Group. Rosen holds a Band 1 Star Individual designation from Chambers USA — one of only two nationally in law firm defense — and has defended over 150 law firm malpractice lawsuits with aggregate claims exceeding $50 billion. Fenwick hired the best available law firm defense lawyers in the United States before a single plaintiff filed suit against it.

## VIII. Plaintiffs' Reliance — No Contributory Negligence

51. Each Plaintiff entrusted assets to FTX in reasonable reliance on FTX's representations that customer assets were segregated, safely held, and subject to responsible legal oversight. Those representations were made credible by Fenwick & West LLP's institutional association with FTX — its status as FTX's primary outside counsel, its public promotion of FTX on its firm website, and the professional standing of its individual attorneys in the technology and venture capital communities. The connection between Fenwick's

institutional name and FTX's legitimacy was not incidental. It was deliberate. FTX insiders specifically cited 'the great Fenwick name' as a tool for building investor and customer confidence.

52. No Plaintiff had any means of knowing — through any publicly available information or any reasonable independent investigation — that Fenwick attorneys had been specifically informed by a senior FTX officer that customer funds were being misused, or that Fenwick attorneys had advised on how to continue and conceal that misuse. That information was not public. It was deliberately concealed by the very communications system that Fenwick attorneys implemented. A customer who relied on FTX's professional legitimacy signal, without knowledge of the specific information that Singh conveyed to Fenwick attorneys, was not negligent in that reliance. Each Plaintiff's reliance was reasonable. The District of Columbia contributory negligence doctrine — which bars recovery by plaintiffs who contribute to their own injury — does not apply to plaintiffs whose injury results from the deliberate concealment, by the defendants, of the very information that would have altered the plaintiffs' conduct.

## IX. The Privity Analysis

53. The District of Columbia applies the general rule that legal malpractice requires privity of contract. National Savings Bank v. Ward, 100 U.S. 195 (1879). The DC Court of Appeals recognized the fraud and collusion exception in Morowitz v. Marvel, 423 A.2d 196, 197 (D.C. 1980): 'Exception was first made to this stringent requirement of privity in cases involving fraud or collusion.'

54. The fraud and collusion exception applies here on two independent grounds. First: Singh's sworn testimony establishes that Fenwick attorneys received specific disclosure of ongoing fraud against FTX customers and responded by advising on its concealment. An attorney who provides professional advice in furtherance of a fraud, after receiving specific disclosure of its existence, participates in that fraud. The privity exception for fraud and collusion removes the shield for exactly this conduct. The DC Court of Appeals drew the distinction in Morowitz between ordinary malpractice — where the attorney errs — and fraud or collusion — where the attorney participates. Fenwick's attorneys, on Singh's account, participated. Second: the Examiner's finding that Fenwick attorneys 'implemented' the Signal concealment mechanism crosses the line from advice to act. A firm that implements a concealment tool is not an adviser; it is a participant. Participants in fraud cannot invoke the privity shield that protects advisers.

55. Independently of the Morowitz exception: Friedberg's Fenwick letterhead representations to institutional investors and lenders, and Fenwick's creation of North Dimension as a false commercial entity, constitute direct fraudulent misrepresentations to identifiable third parties — requiring no privity exception. The DC Court of Appeals has long recognized

that attorneys who make direct fraudulent representations to non-clients are liable to those non-clients for the resulting harm.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Professional Malpractice — Fraud and Collusion Exception**

**Against Fenwick & West LLP, Newby, Albertson, and Rosenthal**

56. Plaintiffs incorporate paragraphs 1 through 55.

57. Each named defendant owed a duty of care to Plaintiffs as members of the specifically identifiable FTX customer class, under the fraud and collusion exception recognized in Morowitz v. Marvel, 423 A.2d 196 (D.C. 1980). Fenwick & West LLP owed this duty as the firm whose institutional name and professional standing were used to signal FTX's legitimacy to that customer class. Newby owed this duty through his individual professional participation in implementing FTX's communications concealment system after Fenwick attorneys had received Singh's disclosure. Albertson owed this duty through his individual professional facilitation of FTX's institutional credibility campaign directed at the investor and customer community. Rosenthal owed this duty through his specific institutional responsibility for the conflict analysis that would have prevented the concurrent FTX/Alameda representation — the structural condition that enabled Fenwick's participation in the fraud.

58. Each defendant breached the applicable standard of professional care through the specific acts described in the Facts section of this complaint. The standard of care is established by the DC Rules of Professional Conduct: DC RPC 1.2(d) (prohibiting assistance to clients in conduct the attorney knows is criminal or fraudulent); DC RPC 1.7 (prohibiting unwaivered concurrent conflicts of interest); and DC RPC 1.16(a) (requiring mandatory withdrawal upon knowledge that continued representation would violate the Rules or other law). Waldman v. Levine, 544 A.2d 683, 690-91 (D.C. 1988).

59. Each breach was the direct and proximate cause of each Plaintiff's losses. The independent criminal acts of Bankman-Fried and other FTX principals do not constitute superseding causes under District of Columbia law. Where defendants' professional acts foreseeably create the conditions under which a third party's criminal conduct harms an identifiable plaintiff class, and where defendants had specific knowledge of the ongoing criminal conduct, the intervening acts are within the scope of foreseeable risk. Restatement (Second) of Torts § 448.

**WHEREFORE,** Plaintiffs demand judgment against Fenwick & West LLP, Newby, Albertson, and Rosenthal for compensatory damages in excess of USD $525,000,000, disgorgement of all professional fees received from FTX, attorneys' fees, costs, and all further just relief.

## SECOND CAUSE OF ACTION

**Direct Fraudulent Misrepresentation to Third Parties**

**Against Fenwick & West LLP and John Doe No. 1**

60. Plaintiffs incorporate paragraphs 38 through 46.

61. While a named partner at Fenwick & West LLP, Daniel Friedberg made specific written representations on Fenwick's official firm letterhead to institutional investors and lenders who were considering providing capital or credit to FTX or Alameda Research. Those representations stated that the firm knew the principal of Alameda Research and considered him of high reputation in the industry. Those representations were material — they were made specifically to influence commercial decisions involving FTX and Alameda. They were false — Bankman-Fried was convicted of seven counts of federal fraud. They were made on Fenwick's official letterhead, which identified and associated the firm with those representations. They were made knowingly or with reckless disregard for their truth. Persons and entities who received those representations and who acted in reliance on them by providing capital, credit, or commercial accommodation to FTX or Alameda suffered financial injury as a direct result.

62. Separately: Fenwick's creation of North Dimension Inc. as a Delaware entity publicly presenting itself as an electronics retailer — when it was in fact a conduit for the movement of stolen FTX customer funds — constituted a direct fraudulent commercial misrepresentation to banks, counterparties, and commercial actors who dealt with North Dimension in reliance on its fraudulently presented commercial identity. Fenwick incorporated this entity. Fenwick created the false commercial identity. The resulting injury to those who relied on North Dimension's presented legitimacy flows directly from Fenwick's act.

63. Each Plaintiff deposited assets on FTX in an ecosystem that Friedberg's letterhead representations and North Dimension's fraudulent commercial identity helped sustain as credible and legitimate. The continued appearance of FTX's institutional legitimacy — supported by these specific professional acts of Fenwick attorneys — was the condition that enabled each Plaintiff's reliance.

**WHEREFORE,** Plaintiffs demand judgment against Fenwick & West LLP and John Doe No. 1 for compensatory damages, enhanced and punitive damages reflecting the deliberate and fraudulent character of the misrepresentations, disgorgement, attorneys' fees, costs, and all further just relief.

## THIRD CAUSE OF ACTION

**Gross Negligence**

**Against All Defendants**

64. Plaintiffs incorporate paragraphs 38 through 55.

65. Each Defendant's conduct constitutes gross negligence — reckless, conscious, sustained indifference to professional obligations maintained across multiple actors, over multiple years, through multiple specific acts and omissions. Fenwick ran ethics CLE programs for its lawyers while permitting the concurrent FTX/Alameda representation to proceed unaddressed. Fenwick maintained a published conflict analysis framework while that framework failed completely on the most consequential concurrent conflict in its recent history. Fenwick created shell companies, implemented evidence-destruction systems, and drafted backdated agreements — each a specific professional act involving conscious choice. No firm of Fenwick's stature and resources stumbles into this pattern. It proceeds through it with specific professional acts at each step. The pattern constitutes gross negligence and supports enhanced damages against each individual Defendant.

**WHEREFORE,** Plaintiffs demand judgment for compensatory damages, enhanced damages in amounts to be determined at trial, and all further just relief.


## FOURTH CAUSE OF ACTION

**Negligent Misrepresentation**

**Against Defendants Albertson and Fenwick & West LLP**

66. Plaintiffs incorporate paragraphs 38 through 47 and 51 through 52.

67. Fenwick & West LLP and Defendant Albertson, in the course of professional practice, supplied information — specifically the professional credibility and institutional endorsement of FTX — for the guidance of the FTX investor and customer community in their business decisions. Restatement (Second) of Torts § 552. The evidence that FTX insiders cited 'the great Fenwick name' as essential to obtaining institutional credibility establishes that this credibility transfer was deliberate and known to Fenwick. Fenwick failed to disclaim or correct this use of its name. Albertson actively facilitated it through his individual VC introductions and corporate work. Each Plaintiff justifiably relied on the signal of professional legitimacy that Fenwick's continued representation conveyed. Each suffered losses that were the proximate result of that reliance.

**WHEREFORE,** Plaintiffs demand judgment against Fenwick & West LLP and Defendant Albertson for compensatory damages, attorneys' fees, costs, and all further just relief.


## FIFTH CAUSE OF ACTION

## Governance and Oversight Liability

## Against Defendants Dickson, Cole, and Ensign

68. Plaintiffs incorporate paragraphs 48 through 49 and 55.

69. Richard L. Dickson, as Firmwide Chair, bore ultimate institutional responsibility for Fenwick's quality management and conflict monitoring systems. Rodger R. Cole, as Managing Partner throughout the FTX engagement, bore operational responsibility for all firm matters, including client acceptance, conflict analysis, and the firm's institutional decision to simultaneously represent FTX and Alameda. Thomas Ensign, as the founding partner of Fenwick's DC office — opened specifically to serve the technology client base with regulatory exposure that FTX exemplified — bore DC-level governance responsibility for Fenwick's technology regulatory practice during the engagement period. Each of these governance defendants personally failed to discharge those responsibilities. Their failures directly enabled the concurrent representation, the shell company creation, and the concealment mechanisms that caused each Plaintiff's losses.

**WHEREFORE,** Plaintiffs demand judgment against Dickson, Cole, and Ensign individually for compensatory damages, enhanced damages, disgorgement of compensation received during the FTX engagement period, and all further just relief.

## SIXTH CAUSE OF ACTION

## Aiding and Abetting Breach of Fiduciary Duty

## Against Defendants Newby, Albertson, Rosenthal, and Fenwick & West LLP

70. Plaintiffs incorporate paragraphs 40 through 42 and 43 through 49.

71. The principals of FTX — including Samuel Bankman-Fried — breached their fiduciary duties to FTX customers through the systematic misappropriation of approximately eight to thirteen billion dollars in customer assets. This breach is established by multiple federal criminal convictions, guilty pleas, and the findings of the court-appointed Independent Examiner. Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).

72. Each defendant in this count had actual knowledge of this breach. Singh's sworn testimony establishes that he conveyed the specific facts of the misappropriation to Fenwick attorneys. Each defendant who was part of the Fenwick engagement team during the relevant period had or should have had actual knowledge through the firm's own internal communications and the specific information conveyed by Singh. Defendant Newby had actual knowledge through his participation in FTX's regulatory compliance and communications work during the period when Singh's disclosure was made to Fenwick. Defendant Albertson had actual knowledge through his FTX corporate work during the same period. Defendant Rosenthal had actual knowledge through his role as Conflicts Attorney, which required him to assess the adverseness of FTX's and Alameda's interests

— an assessment that would have revealed the customer fund misappropriation. Fenwick & West LLP as an entity had actual knowledge through the aggregate of its attorneys' knowledge received in the course of the firm's representation.

73. Each defendant in this count substantially assisted the breach: Newby through implementing the Signal auto-delete system that enabled the fraud's continuation and concealment; Albertson through the VC credibility transfer that sustained the fraudulent enterprise's access to institutional capital; Rosenthal through the conflict clearance failure that enabled the simultaneous representation structural precondition for the fraud; and Fenwick entity through the creation of North Dimension and the drafting of backdated agreements that provided the fraud's corporate infrastructure.

**WHEREFORE,** Plaintiffs demand judgment against Newby, Albertson, Rosenthal, and Fenwick & West LLP for compensatory damages, attorneys' fees, costs, and all further just relief.


## SEVENTH CAUSE OF ACTION

**Unjust Enrichment and Disgorgement**

**Against All Defendants**

74. Plaintiffs incorporate paragraphs 38 through 55.

75. Each Defendant received professional compensation — Fenwick's legal fees and each partner's distributions — derived from Fenwick's representation of FTX. Fenwick's fees were paid from FTX's operating assets, which substantially consisted of customer deposits including the assets entrusted by each Plaintiff. An attorney is not entitled to retain fees earned in the course of representations conducted in violation of DC RPC 1.7 and DC RPC 1.2(d). The retention of fees paid from misappropriated customer assets by attorneys who advised on the misappropriation's concealment is unjust enrichment. Disgorgement is the appropriate remedy.

**WHEREFORE,** Plaintiffs demand judgment for disgorgement of all professional fees and personal compensation received by each Defendant in connection with the FTX engagement, attorneys' fees, costs, and all further just relief.


## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

(A) Compensatory damages in excess of USD $525,000,000: Kent Byers — in excess of USD $2,500,000; Errol Alistair — in excess of USD $25,000,000; Junhao — in excess of USD $500,000,000; S. Roberts — in excess of USD $3,700,000; Yang How — approximately USD $950,000; Lucky D. — approximately USD $620,000; and all remaining Plaintiffs in amounts to be established at trial. Any amounts received in Civil Action No. 2:26-civ-05195 (D.N.J.) or MDL No. 1:23-md-03076-KMM shall be credited against the recovery herein, such that total recovery across all proceedings shall not exceed Plaintiffs' actual damages;

(B) Enhanced and punitive damages against Defendants Newby and Friedberg (John Doe No. 1) for deliberate and reckless individual professional conduct, in amounts to be determined at trial, to be satisfied from personal assets;

(C) Disgorgement of all professional fees and personal compensation received by each Defendant in connection with the FTX engagement;

(D) An adverse inference instruction at trial as a sanction for Fenwick's destruction of FTX website content in violation of its litigation hold obligations;

(E) Mandatory FRCP 26(a)(1)(A)(iv) initial disclosure of all applicable insurance agreements — professional liability, management liability, and commercial general liability — with remaining available aggregate limits;

(F) An order preserving all Fenwick conflict check records, engagement letters, corporate formation files for North Dimension Inc. and related entities, and Risk Management files relating to FTX and Alameda Research;

(G) Pre-judgment and post-judgment interest at the maximum rate permitted by law;

(H) Attorneys' fees and costs to the extent permitted by applicable law; and

(I) Such other and further relief as this Court deems just and appropriate.

## RELATED CASE NOTICE — LCvR 40.5

Pursuant to Local Civil Rule 40.5(b), Plaintiffs provide notice that the following pending proceedings share operative facts with the above-captioned action and are therefore related cases within the meaning of LCvR 40.5(a):

**(1)**  MDL No. 1:23-md-03076-KMM, In re: FTX Cryptocurrency Exchange Collapse Litigation, United States District Court for the Southern District of Florida (Judge K. Michael Moore). This Multi-District Litigation involves common questions of fact arising from the collapse of FTX Trading Ltd. The Fenwick & West defendants named herein are also named defendants in the MDL Law Firm Track. Plaintiffs in this action have not participated as named plaintiffs or class representatives in the MDL, have not executed any MDL class counsel engagement agreement, and are not subject to any MDL bar or settlement order. All Rule 24 rights are expressly reserved.

**(2)**  Civil Action No. 2:26-civ-05195, United States District Court for the District of New Jersey. The defendants in that action are joint tortfeasors with the Fenwick defendants named herein, as alleged in paragraph 8 of this Complaint. Total recovery across all proceedings combined shall not exceed Plaintiffs' actual compensatory damages.

## CORPORATE DISCLOSURE STATEMENT — LCvR 26.1 / FRCP 7.1

Pursuant to Local Civil Rule 26.1 and Federal Rule of Civil Procedure 7.1, the undersigned counsel certifies as follows:

**Defendant Fenwick & West LLP:** A California limited liability partnership. No parent corporation. No publicly traded corporation owns ten percent (10%) or more of any partnership interest.

**Plaintiff Morebet Limited:** A limited liability company organized under the laws of the United Kingdom. No parent corporation and no publicly traded corporation owns ten percent (10%) or more of its shares or membership interests.

**Plaintiff Loods B.V.:** A besloten vennootschap (private limited liability company) organized under the laws of the European Union. No parent corporation and no publicly traded corporation owns ten percent (10%) or more of its shares.

**Plaintiff Drake HK:** A limited liability company organized under the laws of the Hong Kong Special Administrative Region, People's Republic of China. No parent corporation and no publicly traded corporation owns ten percent (10%) or more of its shares.

## SERVICE OF PROCESS — DEFENDANT ADDRESS SCHEDULE

Pursuant to Federal Rule of Civil Procedure 4, the following addresses are designated for service of the Summons and Complaint upon each named Defendant. Plaintiffs respectfully request that

the Clerk of Court issue one (1) Summons directed to each of the seven Defendants listed below. Service shall be effected in the manner specified for each Defendant's legal status.

**FILING COURT:**  United States District Court for the District of Columbia

E. Barrett Prettyman United States Courthouse

333 Constitution Avenue, NW, Washington, DC 20001

Clerk of Court: Angela D. Caesar | Tel: (202) 354-3000

**1. FENWICK & WEST LLP (California Limited Liability Partnership)**

**Authority:** FRCP 4(h)(1)(B) — service by delivery to an officer, general partner, managing or general agent, or agent authorized by appointment or law to receive process.

**Primary Service Address (Principal Place of Business):**

Fenwick & West LLP

801 California Street

Mountain View, CA 94041

Attn: Dawn Belt, Managing Partner

Tel: (650) 988-8500

**Washington, D.C. Office (Alternate / DC-Directed Claims):**

Fenwick & West LLP

1155 F Street NW, 12th Floor

Washington, DC 20004

Attn: Thomas J. Ensign, Esq., Founding Partner

Tel: (202) 970-3000

**Anticipated Defense Counsel (Gibson, Dunn & Crutcher LLP — MDL Record; appearance in this action to be confirmed upon filing):**

Kevin S. Rosen, Esq.  |  krosen@gibsondunn.com

Nancy E. Hart, Esq.  |  nhart@gibsondunn.com

Gibson, Dunn & Crutcher LLP

1700 M Street, N.W.

Washington, D.C. 20036-4504

Tel: (202) 955-8500

**2. TYLER NEWBY, ESQ. (Individual — California)**

**Authority:** FRCP 4(e)(2)(B) or (C) — service at individual's usual place of abode or upon authorized agent; California Code of Civil Procedure § 415.20 as alternative.

Fenwick & West LLP (last known employer)

801 California Street

Mountain View, CA 94041

Email: tnewby@fenwick.com

*Personal residential address: to be confirmed through early discovery if business-address service is not accepted.*

### 3. ANDREW T. ALBERTSON, ESQ. (Individual — California)

**Authority:** FRCP 4(e)(2)(B) or (C).

Fenwick & West LLP

801 California Street

Mountain View, CA 94041

Email: aalbertson@fenwick.com

### 4. RICHARD L. DICKSON, ESQ. (Individual — California | Firmwide Chair)

**Authority:** FRCP 4(e)(2)(B) or (C).

Fenwick & West LLP (Firmwide Chair)

801 California Street

Mountain View, CA 94041

Email: rdickson@fenwick.com

### 5. RODGER R. COLE, ESQ. (Individual — California | Retired Managing Partner)

**Authority:** FRCP 4(e)(1) per California CCP § 415.20, or FRCP 4(e)(2). Personal residential address to be confirmed through early discovery.

**Last Known Business Address:**

Fenwick & West LLP

801 California Street

Mountain View, CA 94041

Email: rcole@fenwick.com

*Note: Cole is retired from Fenwick. Plaintiffs reserve the right to seek early jurisdictional discovery to confirm personal residential address if business-address service is not accepted.*

### 6. THOMAS ENSIGN, ESQ. (Individual — District of Columbia Resident | Founding Partner, DC Office)

**Authority:** FRCP 4(e)(2)(B) or (C); DC Code § 13-423(a)(1). Ensign is a District of Columbia resident and is subject to general personal jurisdiction in this Court.

Fenwick & West LLP

1155 F Street NW, 12th Floor

Washington, DC 20004

Email: tensign@fenwick.com

Tel: (202) 970-3000

**7. NOAH ROSENTHAL, ESQ. (Individual — Conflicts Attorney, Risk Management)**

**Authority:** FRCP 4(e)(2)(B) or (C). State of residence to be confirmed through early discovery per paragraph 35 of this Complaint.

Fenwick & West LLP

801 California Street

Mountain View, CA 94041

Email: nrosenthal@fenwick.com

*Note: Rosenthal's state of domicile has not been publicly confirmed. Plaintiffs reserve the right to conduct early jurisdictional discovery regarding his state of residence, as alleged in paragraph 35.*

## PRO HAC VICE ADMISSION NOTICE — LCvR 83.2

Lead Counsel Edward Lehman, Esq. (Illinois ARDC No. 6194489) and Co-Counsel Anthony Scordo, Esq. are not members of the bar of this Court. Both will seek admission pro hac vice pursuant to Local Civil Rule 83.2(d) contemporaneously with or immediately following the filing of this Complaint. D.C. Local Counsel Wayne Hood II, Esq. (DC Bar No. 187551), Of Counsel, Hargrove Firm LLP, is a member in good standing of the bar of this Court, will serve as sponsoring local counsel, and will electronically file all documents in this action through the CM/ECF system until PHV admission of lead and co-counsel is granted.

Respectfully submitted,

Dated: May 13, 2026

/s/ Edward Lehman

**EDWARD LEHMAN, ESQ.**

Illinois ARDC No. 6194489 | Lehman, Lee & Xu

Suite 33rd Floor, Tower One, Times Square

1 Matheson Street, Causeway Bay, Hong Kong SAR, PRC

Tel: (852) 3588-2188 | Fax: (852) 3588-2088 | mail@lehmanlaw.com

*Lead Counsel for Plaintiffs | Pro Hac Vice Admission Pending*

/s/ Anthony Scordo

**ANTHONY SCORDO, ESQ., P.C.**

The Law Office of Anthony Scordo, Esq., P.C.

69 E. Allendale Road, Saddle River, NJ 07458 | P.O. Box 74, Cedar Grove, NJ 07009

Tel: (973) 837-1861 | Fax: (973) 837-9650 | anthonyscordo@msn.com

*Co-Counsel for Plaintiffs | Pro Hac Vice Admission Pending*

**WAYNE HOOD II, ESQ.**

Infinite Estate Planning, LLC

2525 Elvans Road SE Washington, DC 20020

Tel: (202) 978-0505 | wayne@infiniteestateplanning.com

*D.C. Local Counsel for Plaintiffs*